**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **BLAKE MCSPADDEN** | : | **CIVIL ACTION** |
| | : | |
| **vs.** | : | |
| | : | |
| **WILLIAM J. WOLFE and** | : | **NO.  07-1263** |
| **PATRICK THOMPSON** | : | |
| _____ | : | |

**DuBois, J.**                                                          **March 31, 2008**

**<u>MEMORANDUM</u>**

**I.  Introduction**

Plaintiff Blake McSpadden, a former inmate at the State Correctional Institution at

Albion, Pennsylvania ("SCI-Albion"), commenced this action pursuant to 42 U.S.C. § 1983 on

March 29, 2007, claiming that in 2003 two SCI-Albion officials denied him credit for time-

served as directed by the Court of Common Pleas of Philadelphia County.  Specifically, plaintiff

claims that William J. Wolfe, Superintendent of SCI-Albion, and Patrick Thompson,[1] a Records

Specialist at SCI-Albion, wrongfully and deliberately caused him to be incarcerated for over

1,050 days after the expiration of his sentence, in violation of his Fourth, Fifth, Eighth, and

Fourteenth Amendment rights.  Plaintiff sues defendants Wolfe and Thompson in their individual

capacities and seeks money damages only. Presently before the Court is defendants' Motion to

Dismiss, or in the Alternative, to Transfer.

_____

[1]  The Complaint names as a defendant "Patrick Thompson," although the record and
defendants' pleadings disclose that defendant "Patrick Thompson" is, in fact, Patricia Thompson.
(See, e.g., Defs.' Ex. 1, Decl. of Patricia Thompson.)  Hereafter, Patricia Thompson is referred to
only as defendant "Thompson."

## II.  Factual Background and Procedural History

On December 23, 1992, plaintiff was sentenced by the Court of Common Pleas of Philadelphia County to a term of four to twenty-three months imprisonment, to be followed by one year of probation, for a burglary conviction.  After violating his parole, plaintiff was reincarcerated from October 8, 1993 to March 4, 1994, and again from May 28, 1994 to August 2, 1995.  On September 21, 1995, plaintiff again violated the terms of his probation and received a new sentence of eleven and one-half months to twenty three months imprisonment, followed by one year of probation.  Pursuant to this sentence, plaintiff was incarcerated from September 21, 1995 to September 6, 1996.  On March 16, 1997 plaintiff violated his probation once more. Judge Arnold New of the Court of Common Pleas of Philadelphia County sentenced plaintiff to a term of three to ten years imprisonment, effective April 10, 1997.  (Compl. ¶ 9; Defs.' Ex. 1B.)

On July 22, 1998, Judge New issued an amended order granting plaintiff credit for time served dating back to December, 1992.  Specifically, the court granted plaintiff credit for the following periods:

- December 23, 1992 through April 23, 1993
- October 8, 1993 through March 4, 1994
- May 28, 1994 through August 2, 1995
- September 21, 1995 through September 6, 1996
- March 16, 1997 through April 10, 1997

(Compl. ¶ 9; Pl.'s Resp. to Defs.' Mot. to Dismiss 3; Defs.' Ex. 1B.)  Pursuant to Judge New's amended order, officials at the State Correctional Institution in Chester, Pennsylvania ("SCI-Chester"), where plaintiff was incarcerated in 1998, prepared a Sentence Status Change Report reflecting a credit of an "additional 1,050 Days credit not previously granted." (Pl.'s Ex. P-1.)

At a later point, plaintiff was transferred to SCI-Albion, where, according to plaintiff,

2

Superintendent Wolfe "utter[ly] disregarded both the trial court's July 22, 1998 amended order and [the] Sentence Status Change Report" prepared at SCI-Chester, and "refused to apply the 1,050 days as credit towards Plaintiff's sentence." (Pl.'s Resp. to Defs.' Mot. to Dismiss 4.)

On or about July 31, 2003, plaintiff submitted an "Inmate's Request to Staff Member" to the "Albion Record Room Supervisor" questioning the SCI-Albion officials' calculation of his credit and asking, *inter alia*, "[W]hy are you stopping my discharge?" (Defs.' Ex. 1A.) In response, defendant Thompson, the Records Specialist, informed plaintiff that he "[could not] receive credit as [he] did from 1992-1993, 93-94, 94-95, 95-96 on [his] new sentence" under the Superior Court of Pennsylvania's "recent ruling [in] Commonwealth v. Bowser," 783 A.2d 348 (Pa. Super. 2001). (Defs.' Ex. 1A.) Defendant Thompson further wrote that the "matter is now in the hands of Mr. R. Sears Chief Counsel's office" and that "unfortunately we cannot release you until this matter is resolved and your sentence structure is corrected." (Defs.' Ex. 1A.)

By letter dated August 4, 2003, defendant Wolfe requested the assistance of Judge New "in resolving a difficulty within the sentence . . . imposed on [plaintiff]." (Defs.' Ex. 1B.) Wolfe explained in his letter that "[t]he time from 12/23/92 to 04/23/93, 10/08/93 to 03/04/94, 05/28/94 to 08/02/95, 09/21/95 to 09/06/96 was previously credited towards the original sentence of 4 months to 23 months" and that officials at Albion "have not credited [plaintiff] with this credit . . . . . Credit has been denied in accordance with Commonwealth v. Bowser." (Defs. Ex. 1B.) Wolfe informed Judge New that SCI-Albion would "apply the credit if after reading the above [explanation], Your Honor advises us to do so." (Defs. Ex. 1B.) Judge New did not respond to defendant Wolfe.

On October 30, 2003, plaintiff again submitted an "Inmate Request to Staff Member."

(Defs.' Ex. 1D.)  In that Request, plaintiff sought an explanation from defendant Wolfe about

"the reason why the [Department of Corrections ("DOC")] and the S.C.I.-Albion record office

took away my credit time that I received from the Phila. credit office in Phila.?"  (Defs. Ex. 1D.)

Defendant Thompson responded to the request on November 3, 2003, as follows:

> Per DOC "Split Sentence Rule."  When an inmate is sentenced on the same
> indictment bill to a term of confinement with a CS term of probation it is known
> as a split sentence[.]  When you violate the probation and are resentenced you are
> not entitled to all the credit served on the original sentence[.]  I have discussed
> this with our lead counsel in Central Office[.]  He advised me to send a double
> credit letter to your sentencing judge which I did back in August 4, 2003.  I never
> received a response from Judge New when I sent the letter[.]  Now that you are
> back as a Parole Violater I again sent a letter to R. Sears Chief Counsel in Central
> Office[.]  He said to send a 2nd request to Judge New regarding this matter and to
> remove your credit . . . .

(Defs.'s Ex. 1D.)

As noted in defendant Thompson's November 3, 2003, response to plaintiff, officials at

SCI-Albion sent a second letter to Judge New, dated October 28, 2003, requesting that Judge

New "notify us if your Honor wants the inmate to have the additional credit as stated above."[2]

(Compl.¶ 10; Defs.' Ex. 1C.)  On November 3, 2003, Judge New responded with a short letter

that read, in relevant part: "Please be advised that my sentence of April 10, 1997 of 3 to 10 years

was **with all appropriate credit for time served**.  I do not want any additional credit to accrue

to the defendant."  (Compl. ¶ 11; Defs.' Ex. 1E) (emphasis in original).  Significantly, Judge

New did not reference his amended order of July 22, 1998 in his letter.  Defendants construed

Judge New's letter to mean that plaintiff should be granted credit only for time served from

---

[2] It is clear from the second letter that "additional credit" refers to credit for time served "from 12/23/92 to 04/23/93, 10/08/93 to 03/04/94, 05/28/94 to 08/02/95, 09/21/95 to 09/06/96." (Defs. Ex. 1C.)

March 16, 1997 through April 10, 1997, and not any other "additional credit."  (Defs.' Mem. of

Law in Supp. of Mot. to Dismiss 12-13); see also McSpadden v. Dep't of Corr., 886 A.2d 321,

328 (Pa. Commw. Ct. 2005) ("DOC took [Judge New's letter] to mean that McSpadden was not

entitled to the credit the trial court had awarded him.").  Consequently, defendants continued to

detain plaintiff.

On September 3, 2004, plaintiff petitioned the Commonwealth Court of Pennsylvania for

review of DOC's decision and requested that the court order DOC to award him credit for all

periods of incarceration specified in Judge New's amended order of July 22, 1998.  See

McSpadden v. Dep't of Corrs., 870 A.2d 975 (Pa. Commw. Ct. 2005).  Plaintiff alleged, inter

alia, that defendants were violating his rights under the Pennsylvania and United States

Constitutions by refusing to award him all such credit.  Plaintiff also asserted that the case was

properly before the Commonwealth Court because it concerned the "legality of a sentence."  Id.

at 977-78.  Defendants filed "preliminary object[ions] in the nature of a demurrer on the basis

that McSpadden fail[ed] to state a claim upon which relief may be granted."  Id. at 978.  In an

opinion dated March 17, 2005, the Commonwealth Court held that, under Pennsylvania law,

"McSpadden is entitled to receive credit for all time spent in custody under a prior sentence when

he is later reprosecuted and resentenced for the same offense."  Id. at 982.  The court dismissed

defendants' preliminary objections and directed the "DOC to credit McSpadden for the following

periods: December 23, 1992, to April 23, 1993; October 8, 1993, to March 4, 1994; May 28,

1994, to August 2, 1995; September 21, 1995, to September 6, 1996; and March 16, 1997, to

April 10, 1997."  Id. at 982.

Subsequently, the DOC appealed the Commonwealth Court's decision to the

Pennsylvania Supreme Court.  The Pennsylvania Supreme Court remanded the case to the

Commonwealth Court with instructions that it consider plaintiff's claims in accordance with its

decision in a similar case, McCray v. Pa. Dep't of Corrs., 872 A.2d 1127 (Pa. 2005).  In McCray,

the Pennsylvania Supreme Court held that DOC did not have a duty to award a prisoner credit for

time served when a trial court has not so directed.  See id. at 1133.  The McCray court observed

that DOC is "an executive branch agency that is charged with faithfully implementing the

sentences imposed by the courts.  As part of the executive branch, the Department [DOC] lacks

the power to adjudicate the legality of a sentence or add to or delete sentencing conditions."  Id.

On November 4, 2005, upon consideration of McCray, the Commonwealth Court held

that DOC "did not have the authority to delete the proviso of the specific time served contained

in the trial court's sentence."  McSpadden, 886 A.2d at 328 (referencing Judge New's order of

July 22, 1998).  The Commonwealth Court again directed DOC to credit plaintiff with all

previous time served.[3]  Id. at 329.  Plaintiff was thereupon released from custody.  (Defs.' Mem.

of Law in Supp. of Mot. to Dismiss 3.)  On March 29, 2007, plaintiff filed the instant § 1983

action.[4]

---

[3]  Specifically, the court directed DOC to "credit McSpadden for the following periods:
December 23, 1992, to April 23, 1993; October 8, 1993, to March 4, 1994; May 28, 1994, to
August 2, 1995; September 21, 1995, to September 6, 1996; and March 16, 1997, to April 10,
1997."  McSpadden, 886 A.2d at 329.

[4]  Section 1983, in relevant part, provides: "Every person who, under color of any statute,
ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction thereof to the deprivation of
any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the
party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  42
U.S.C. § 1983.

### III.  Legal Standard

Defendants have filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and, in the alternative, a motion to dismiss or transfer for improper venue under Rule 12(b)(3).  In considering a motion to dismiss for failure to state a claim or a motion to transfer venue, courts must accept as true all of the factual allegations pleaded in the complaint and draw all reasonable inferences in favor of the non-moving party. See Greenwood v. Singel, 823 F.Supp. 1207, 1210 (E.D. Pa. 1993); Byrd v. Johnston, 2007 WL 4373047, at *2 (E.D. Pa. Dec. 14, 2007).

### IV.  Discussion

#### A.  Motion to Dismiss for Failure to State a Claim

Defendants' motion presents two arguments as to why the Complaint should be dismissed for failure to state a claim.  First, defendants argue that plaintiff's claims are time-barred by the applicable statute of limitations.  Second, defendants argue that they are entitled to qualified immunity.  The Court addresses each argument in turn.

##### i.  Defendants' Statute of Limitations Defense

A statute of limitations defense may serve as the basis for a Rule 12(b)(6) motion "where the complaint facially shows noncompliance with the limitations period."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir.1994).  When reviewing a motion to dismiss under Rule 12(b)(6) on statute of limitations grounds, the Court exercises plenary review to determine "whether 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  See Barkley v. FMP/Lakeside Associates, 1999 WL 345567, at *2 (E.D. Pa. May 14, 1999) (quoting Cito v. Bridgewater

7

Township Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989) (citations and emphasis omitted)).  It is well-settled that, on a motion to dismiss, courts may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver, 38 F.3d at 1384 n.2; see also Winer Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007) (when ruling on a motion to dismiss, "courts normally consider . . . documents incorporated into the complaint by reference") (internal quotations and citations omitted); 5B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004 and Supp. 2007) (same).

The Supreme Court has held that the statute of limitations for a Section 1983 claim is "that which the State provides for personal-injury torts."  See Wallace v. Kato, 127 S.Ct. 1091, 1094 (2007).  In Pennsylvania, the statute of limitations for such tort actions is two years.  42 Pa. Cons. Stat. Ann. § 5524.  Defendants argue that plaintiff's Section 1983 claim was not filed within the two-year limitations period and that, therefore, the Complaint fails to state a claim upon which relief can be granted.  For this reason, defendants seek dismissal of the Complaint.

Generally, the limitations period for a § 1983 action begins to run "from the time when the plaintiff knows or has reason to know of his injury."  Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991).  In this case, plaintiff became aware of his "injury" in 2003 when SCI-Albion officials first informed him that they were denying him credit for time-served.  Under the general rule, plaintiff's § 1983 claim would be time-barred because the Complaint was filed in 2007, approximately four years after he knew or had reason to know of his injury.  However, a different rule applies to § 1983 claims for money damages alleging unlawful imprisonment or use of improper disciplinary procedures by prison officials.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Edwards v. Balisok, 520 U.S. 641, 646-47 (1997).  Defendants suggest that Heck

8

"arguably" applies in this case.  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 10.)

In <u>Heck</u>, the Supreme Court held that a § 1983 plaintiff seeking money damages for "an unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" does not have a viable claim until the plaintiff's "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."  <u>Id.</u>, 512 U.S. 477, 486-87 (1994); <u>see also</u> <u>id.</u> at 489-90 (claim for damages attributable to "unconstitutional conviction or sentence *does not accrue* until the conviction or sentence has been invalidated") (emphasis added); <u>Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety</u>, 411 F.3d 427, 435 (3d Cir. 2005) ("[N]o cause of action arises until the conviction or sentence is invalidated, and the statute of limitations does not begin to run until the time of such invalidation").[5]  Absent prior invalidation, a district court must dismiss a § 1983 claim if a judgment in favor of the plaintiff would "necessarily imply the invalidity of his conviction or sentence."[6]  <u>Heck</u>, 512 U.S. at 487.  As the Third Circuit has observed, the "express objectives"

_____

[5]  The Court notes that "<u>Heck</u> uses the word 'sentence' interchangeably with such other terms as 'continuing confinement' and 'imprisonment.'"  <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 83 (2005).

[6]  In a footnote, the Supreme Court explained that some § 1983 claims may proceed prior to a court's invalidation of the prisoner's conviction or sentence if success on the § 1983 claims would not necessarily imply the invalidity of the prisoner's conviction or sentence.  <u>Heck</u>, 512 U.S. at 487 n.7.  For example, "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting from the § 1983 plaintiff's still-outstanding conviction" because such a suit "would not *necessarily* imply that plaintiff's conviction was unlawful."  <u>Id.</u> (emphasis in original).  The Court suggested that the challenged evidence could have been introduced despite a court finding that the search was unlawful because of doctrines such as harmless error or the

of the <u>Heck</u> rule are "to preserve consistency and finality, and to prevent 'a collateral attack on [a] conviction through the vehicle of a civil suit.'"  <u>Smith v. Holtz</u>, 87 F.3d 108, 113 (3d Cir. 1996) (quoting <u>Heck</u>, 512 U.S. at 484).

In <u>Edwards v. Balisok</u>, the Supreme Court extended the reach of <u>Heck</u>.  Balisok, a state prisoner, sought, *inter alia*, damages for use of allegedly unconstitutional disciplinary procedures which resulted in the revocation of his "good-time credits."  <u>Id.</u> at 643.  Balisok claimed that prison officials refused to consider key evidence in a hearing against him, in violation of his Fourteenth Amendment due process rights.  <u>Id.</u> at 643, 646.  Notably, in his § 1983 action, Balisok did not seek restoration of the credits, but rather damages for the alleged violations of his due process rights.  "Applying <u>Heck</u>, the Court found that habeas was the sole vehicle for the inmate's constitutional challenge . . . because the 'principal procedural defect complained of,' namely, deceit and bias on the part of the decisionmaker, 'would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits.'"  <u>Wilkinson v. Doston</u>, 544 U.S. 74, 80-81 (2005) (quoting <u>Balisok</u>, 520 U.S. at 646).

<u>Balisok</u> is seen as extending <u>Heck</u> because, unlike in <u>Heck</u>, success on Balisok's § 1983 claim would not have implied the invalidity of his original conviction or sentence.  Rather, success on Balisok's § 1983 claim would have implied the invalidity of the "punishment imposed" by the prison officials.  <u>Balisok</u>, 520 U.S. at 648; <u>see also</u> <u>Torres v. Fauver</u>, 292 F.3d 141, 143 (3d Cir. 2002) (acknowledging that <u>Balisok</u> extended <u>Heck</u>'s "'favorable termination rule' . . . to prison disciplinary sanctions that alter the duration of a prisoner's incarceration"); 3 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law - Substance &

_____

independent source doctrine.  <u>Id.</u>

PROCEDURE § 17.9 (3d ed. 1999) ("[T]he nature of [Balisok's] claim meant that a court would

have to find that the substantive decision in the prison disciplinary action . . . was erroneous.").

Notwithstanding this distinction, the Supreme Court held that Balisok could not bring his money

damages claim unless his conviction or sentence was invalidated.

> Analyzing Heck, Balisok, and related cases, the Third Circuit has stated that
>
> there is a logical and coherent progression of Supreme Court jurisprudence
> clarifying when § 1983 is unavailable: whenever the challenge ultimately attacks
> the 'core of habeas' - the validity of the continued conviction or the fact or length
> of the sentence - a challenge, however denominated and regardless of the relief
> sought, must be brought by way of a habeas corpus petition.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).  If, however, the prisoner's conviction or

sentence has already been invalidated by a state court, the prisoner's § 1983 claim may proceed

in federal court.  Wallace, 127 S.Ct. at 1097-98 ("[T]he Heck rule for deferred accrual is called

into play only when there exists a conviction or sentence that has *not* been . . . invalidated")

(internal quotations omitted).

> Guided by these principles, the Court finds that the Heck deferred accrual rule (or, as it is

sometimes called, the "favorable termination" rule) applies to this case because "[t]he success of

[plaintiff's] § 1983 action would necessarily imply the invalidity of his confinement."[7]  Stewart

v. City of Phila., 2008 WL 564681, at *1 (3d Cir. Mar. 3, 2008).  The Supreme Court has held

that state prisoners who seek to "invalidate the duration of their confinement directly . . . or

*indirectly* through a judicial determination that necessarily implies the unlawfulness of the

---

[7]  Plaintiff has alleged that defendants "utter[ly] disregarded . . . the trial court's July 22, 1998 amended order" and acted deliberately and maliciously to violate his "right to freedom." (Pl.'s Resp. to Defs.' Mot. to Dismiss 4; Compl. ¶ 19.)

State's custody," are barred from pursuing such action under § 1983.[8]  Wilkinson, 544 U.S. at 81 (emphasis in original); cf. Muhammad v. Close, 540 U.S. 749, 751 (2004) (per curiam) ("Heck's requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction *or the duration of his sentence.*") (emphasis added).  Although plaintiff is making a money damages claim, it "ultimately attacks the 'core of habeas,'" that is, the fact or length of his sentence. Leamer, 288 F.3d at 542.  Accordingly, plaintiff's § 1983 claim could not proceed in federal court until his "detention was . . . declared invalid."  Stewart, 2008 WL 564681, at *1; see also Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006) (holding that Heck's favorable termination rule applies "no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration") (quoting Wilkinson, 544 U.S. at 81-82 (2005)).

Having determined that Heck applies, the Court must now address the critical question in this case: when was plaintiff's detention "declared invalid by a state tribunal authorized to make such [a] determination"?  Heck, 512 U.S. at 486-87.  Defendants argue that the relevant date is March 17, 2005, when the Commonwealth Court first "declared the DOC's sentence calculation invalid."  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 11) ("At that point, McSpadden

---

[8]  However, "indirect" challenges to one's custody may be pursued under § 1983 once a court has invalidated the plaintiff's "confinement or [the] duration" of his confinement.  See Wilkinson, 544 U.S. at 81-82; cf. id. at 80 ("[W]here 'establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction,' . . .  a § 1983 action will not lie 'unless . . . the conviction or sentence has already been invalidated.'") (quoting Heck) (internal citations omitted).

could have filed suit in federal court.")  While acknowledging that the issue was not finally resolved until after March 17, 2005, due to their appeal to the Pennsylvania Supreme Court, defendants contend that it would have been within the purview of a federal court to "stay[] the [§ 1983 action] pending the DOC's appeal to the Supreme Court and the subsequent remand to the Commonwealth Court."  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 11) (citing Wallace v. Kato, 127 S.Ct. at 1098).  Accordingly, defendants argue that plaintiff could have preserved his right to file the § 1983 claim by filing suit earlier and seeking a stay.

By contrast, plaintiff asserts that the "decisive factor" in the Heck accrual analysis is the date "the ongoing wrongful conduct by the Defendants became final."  (Pl.'s Resp. to Defs.' Mot. to Dismiss 10.)  Plaintiff argues that the initial ruling of the Commonwealth Court on March 17, 2005 in favor of plaintiff "was not 'final' in that [DOC] did not have to immediately comply." (Pl.'s Resp. to Defs.' Mot. to Dismiss 10.)  Plaintiff notes that he remained incarcerated "while the appeal process took place."  (Pl.'s Resp. to Defs.' Mot. to Dismiss 10.)  In plaintiff's view, "[n]ot until November 4, 2005, when the Commonwealth Court issued the Writ of Mandamus . . . did the state court 'declare Plaintiff's sentence invalid.'"  (Pl.'s Resp. to Defs.' Mot. to Dismiss 10.)  Accordingly, plaintiff asserts that his § 1983 claim accrued on November 4, 2005.

In Wallace v. Kato, petitioner Andre Wallace filed a § 1983 claim against city law enforcement officials, claiming that he was unlawfully arrested and imprisoned in violation of his Fourth Amendment rights.  Id., 127 S.Ct. at 1094.  Wallace, who had been convicted in state court for first degree murder, but whose conviction was reversed and case remanded for a new trial, argued that, under Heck, he was barred from filing a § 1983 action until the charges against him were dropped, as they eventually were.  Id.  Wallace reasoned that, although there was no

13

extant conviction or sentence against him after the appellate court's reversal, he could not file his § 1983 claim at any point prior to the dismissal of his case because success on his § 1983 claim would have implied the invalidity of any conviction that might have been obtained on retrial; that, he argued, would contravene Heck.  Id. at 1098.  The Supreme Court disagreed.

The Wallace Court held that "the statute of limitations [for] a § 1983 claim seeking damages for [] false arrest [and imprisonment] in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."  Id. at 1100; see also id. at 1096 (explaining that the Court's holding was "[r]eflective of the fact that false imprisonment consists of detention without legal process").  For Wallace, that meant that the statute of limitations on his § 1983 claim for false imprisonment began to run "when he appeared before the examining magistrate and was bound over for trial," and not at the point where the charges against him were dismissed, as he had argued.  Id. at 1097; see also id. at 1096, 1097-98.  The Court stated that Heck "delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction*" and that "[w]hat petitioner seeks . . . is the adoption of a principle that goes well beyond Heck: that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside."  Id. at 1098 (emphases in original).  The Court reasoned that such a rule would be "impractical[]" and "bizarre" because it would

> require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict - all this at a time when it can hardly be known what evidence the prosecution has in its possession.

Id. (citations omitted).

14

Recognizing that under its ruling a district court hearing a § 1983 claim could be confronted with issues yet to be decided, the Wallace Court stated:

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.  If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, Heck will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

Id. at 1098 (citations omitted).  Defendants rely on the dicta cited directly above in support of their argument that plaintiff could have filed his § 1983 claim as early March 17, 2005.

This Court rejects defendants' argument based on Wallace.  There are many important factual distinctions that render Wallace inapposite, including, most importantly, the fact that in this case there was an extant state-court conviction and sentence against plaintiff.  Additionally, unlike Wallace, it cannot be said that plaintiff's wrongful imprisonment came to an end at any point before his release because, in the period after the expiration of his sentence, and under the facts alleged, plaintiff was not ever held "pursuant to legal process."[9]  The Commonwealth

---

[9]  The Wallace Court explained that "the sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process" and that after a prisoner is held pursuant to legal process - after he is "bound over by a magistrate or arraigned on charges," for example - his "false imprisonment ends."  Id., 127 S.Ct. at 1096; cf. id. ("If there is a false arrest claim, damages for that claim cover the time of detention *up until issuance of process or arraignment*, but not more.") (quoting PROSSER & KEETON ON LAW OF TORTS) (emphasis added). "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution" or "wrongful use of the judicial process."  Id.  This explains why Andre Wallace's false imprisonment "ended" prior to his release from custody.  In this case, plaintiff's alleged wrongful detention began at the point his sentence expired and no part of that detention - as distinct from the lawful sentence plaintiff served - was  pursuant to "legal process."  No magistrate or other judge ever authorized plaintiff's *continued detention* prior to his release. Therefore, plaintiff's allegedly unlawful detention, unlike Wallace's, did not end until his release from custody.

Court's decisions support this conclusion.  Finally, the <u>Wallace</u> Court's statements that it is within the power of the district court, and in accord with common practice, to stay a civil action until criminal proceedings are terminated were made within the context of false arrest cases; this Court declines to engraft a more expansive reading on the case.  For all these reasons, this Court finds that <u>Wallace</u> is inapplicable to this case.

Consistent with <u>Heck</u>'s concern for consistency and finality, and reflective of the fact that plaintiff's alleged wrongful imprisonment did not come to an end until he was released by DOC, the Court holds that plaintiff's imprisonment was not declared "invalid," and the statute of limitations did not begin to run, until November 4, 2005.  For this reason, plaintiff's Complaint was timely filed.

### ii.  Defendants' Qualified Immunity Defense

Defendants also argue that the Complaint should be dismissed because they are entitled to qualified immunity.  The Third Circuit has held that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." <u>Leveto v. Lapina</u>, 258 F.3d 156, 161 (3d Cir. 2001) (internal quotations and citations omitted); <u>cf. Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (qualified immunity determined, in part, on basis of "parties' submissions").  The defendant has the burden to establish that he is entitled to qualified immunity.  <u>See</u> <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

"The principles governing claims of qualified immunity are well-established. Under this doctrine, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Id.</u> (quoting <u>Harlow v.</u>

16

Fitzgerald, 457 U.S. 800, 818 (1982)).  "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'"  Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)); see also Saucier, 533 U.S. at 201-02 (further explicating two-step inquiry); Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2006).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.

"The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'"  Davis v. Hall, 375 F.3d 703, 711-12 (8th Cir. 2004) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); Curley, 499 F.3d at 206; cf. Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").  Because qualified immunity provides immunity from suit rather than a mere defense to liability, the question whether one is entitled to such immunity must be resolved at the "earliest possible stage of litigation."  Saucier, 533 U.S. at 200-01.  The Third Circuit has stated that "immunity is intended to protect officials from the potential consequences of suit, including distraction from official duties, inhibition of discretionary action, and deterrence of able people from public service.  '[E]ven such pretrial matters as discovery are to be avoided if possible, as [i]nquiries of this kind can be peculiarly disruptive of effective government.'"  Thomas v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006) (quoting Harlow, 457 U.S. at 817).

17

In this case, defendants argue that they are immune from suit because "at the time of their actions, it was not clearly established that application of the Split Sentence Rule . . . violated an inmate's constitutional rights" and because Judge New's November 3, 2003, letter to defendants, "on its face," affirmed their sentence calculation. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 12.)  Additionally, defendants argue that they are entitled to qualified immunity because they relied on the advice of counsel in denying plaintiff credit for time served. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 13-14.)

In response, plaintiff makes three arguments.  First, plaintiff argues that defendants were "not performing a discretionary function when they chose to blatantly disregard the trial court's July 22, 1998 amended order." (Pl.'s Resp. to Defs.' Mot. to Dismiss 11.)  To the contrary, plaintiff contends that defendants are "ministerial actors" and, thus, not entitled to qualified immunity.  Second, plaintiff asserts that he had a clearly established constitutional right to be released from custody upon completing his court-ordered sentence.  Third, plaintiff claims that defendants are precluded from "using [qualified immunity] as a defense in this case" under the Full Faith and Credit Act, 28 U.S.C. § 1738, and the doctrines of collateral estoppel and res judicata.  The Court addresses plaintiff's arguments in turn.

Plaintiff's first argument is that defendants were "ministerial actors" who were not performing discretionary functions when they denied him credit for time-served as directed by the trial court's amended order. (Pl.'s Resp. to Defs.' Mot. to Dismiss 11.)  At the outset, the Court notes that in this analysis, its focus is on "the nature of the function performed, not the identity of the actor who performed it." Light v. Haws, 472 F.3d 74, 78 (3d Cir. 2007) (citing Larsen v. Senate of the Commonwealth of Pa., 152 F.3d 240, 249 (3d Cir. 1998) (noting that

"[t]he Supreme Court has adopted a functional approach to immunity issues . . . turn[ing] on the nature of the act")).  Thus, the Court will focus on the nature of the function performed by defendants.

In Eddy v. Virgin Islands Water and Power Auth., the Third Circuit stated that "the definition of a discretionary function is broad."  Id., 256 F.3d 204, 210 (3d Cir. 2001).  "A law that fails to specify the precise action that the official must take in each instance creates only discretionary authority; and that authority remains discretionary however egregiously it is abused."  Davis v. Scherer, 468 U.S. 183, 196 n.14 (1984).  "For qualified immunity purposes, a duty is 'ministerial' only where the statute or regulation leaves no room for discretion."  Sellers v. Baer, 28 F.3d 895, 902 (8th Cir. 1994) (cited in Eddy, 256 F.3d at 210-11); cf. Varrone v. Bilotti, 123 F.3d 75, 82 (2d Cir. 1997) (noting that the continued validity of the ministerial duty exception has been questioned and that, in any event, it is "extremely narrow").

Plaintiff does not cite to any statute or regulation as the source of defendants' "ministerial" duties.  Rather, he cites to various decisions of the Pennsylvania state courts, including McCray, which, plaintiff asserts, hold that DOC officials "do not have discretion in carrying out sentencing orders from trial courts."  (Pl.'s Resp. to Defs.' Mot. to Dismiss 12.)  While this Court does not dispute that DOC officials must "faithfully implement[] sentences imposed by the courts," McCray, 872 A.2d at 1133, it also notes that DOC officials are sometimes faced with ambiguous or confusing court orders or directives.  See Oakman v. Dep't of Corrs., 903 A.2d 106, 108 (Pa. Commw. Ct. 2006) (observing that sentencing orders are sometimes "ambiguous").  In such instances, officials are called upon to exercise the kind of judgment which courts have deemed to be discretionary.  Davis, 468 U.S. at 196, n.14.

Moreover, as many courts, including the Third Circuit, have noted, "officials must make discretionary determinations even in the course of applying facially clear provisions." Larsen v. Senate of the Commonwealth of Pa., 154 F.3d 82, 87 n.5 (3d Cir. 1998). Thus, a determination of whether or not the functions performed by DOC officials in this case were "ministerial" does not necessarily answer the question of whether defendants are entitled to immunity.

This case is complicated by the ambiguity in Judge New's November 3, 2003, letter to defendants. (Defs.' Ex. 1E). Because Judge New's letter made no reference to his July 22, 1998 order - the order that granted the "additional credit" - and because Judge New stated that the April 10, 1997 order was "with all appropriate credit," defendants were faced with seemingly conflicting directives from the court and were required to exercise their judgment about the meaning of Judge New's letter. Under the circumstances, the Court concludes that defendants were performing discretionary functions at the times at issue. See Malley, 475 U.S. at 341.

### a. Whether Defendants' Conduct Violated Plaintiff's Constitutional Rights

The Court next addresses the question of whether the plaintiff "has alleged the deprivation of an actual constitutional right at all." Wilson, 526 U.S. at 609; see also Saucier, 533 U.S. at 201 ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"). "If, and only if, the court finds a violation of a constitutional right," will "the court move[] to the second step of the analysis and ask[] whether immunity should nevertheless shield the officer from liability." Curley, 499 F.3d at 207 (internal quotations and citations omitted).

Plaintiff alleges that defendants violated his Fourth, Fifth, Eighth, and Fourteenth

Amendment rights by causing him to be incarcerated for over 1,050 days after his sentence

expired.  With respect to his Fourth and Fifth Amendment claims, plaintiff has "not explained

how [his] factual allegations line up with the elements of these claims."  Barnes v. District of

Columbia, 242 F.R.D. 113, 118 (D.D.C. 2007).  However, "[m]ost courts that have considered

overdetention claims have agreed that they are properly channeled through the Due Process

Clause of the Fourteenth Amendment - and the Court construes plaintiffs' invocation of the Fifth

Amendment as a reference to the identical provisions of the Fourteenth Amendment, which

applies to the States . . . ."[10]  Id. (citing cases).  Because the due process clause of the Fifth

Amendment applies only to federal actors, see Young v. City of Hackensack, 178 Fed. Appx.

169, 171 (3d Cir. 2006); Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001), and

because defendants in this case are state actors, plaintiff does not state a separate and

independent Fifth Amendment claim against defendants.

As to plaintiff's Fourth Amendment claim, although not clearly articulated, the Court

construes the claim to be a claim for an "unreasonable . . . seizure" on the basis of his

Complaint.[11]  (Compl. ¶ 17) ("Defendants herein were aware of McSpadden's situation and knew

that McSpadden's sentence had expired yet defendants refused to release him.")  "What is

constitutionally 'unreasonable' varies with the circumstances, and requires a balancing of the

_____

[10]  The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  Similarly, the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV.

[11]  The Fourth Amendment states, in relevant part:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.

'nature and extent of the governmental interests' that justify the seizure against the 'nature and quality of the intrusion on individual rights' that the seizure imposes." Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir. 2003) (quoting Terry v. Ohio, 392 U.S. 1, 22, 24 (1968)).   Viewing the facts in the light most favorable to the plaintiff, the Court finds that plaintiff has adequately alleged a violation under the Fourth Amendment.

The Court now addresses the remaining constitutional claims.

**_____ i. Eighth Amendment Claim**

"Plaintiff contends that his detention beyond the expiration of his term violated the Eighth Amendment's prohibition against cruel and unusual punishment."  (Pl.'s Supplemental Resp. 1.)  "Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and [un]usual punishment." Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993); see also Sample v. Diecks, 885 F.2d 1099, 1108 (3d Cir. 1989) ("[T]here can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment").  In Sample, the Third Circuit held that,

> to establish § 1983 liability for incarceration without penological justification, a plaintiff must demonstrate three elements.  First, a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted.  Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight.  Finally, the plaintiff must show a casual connection between the official's response to the problem and the unjustified detention.

Id., 885 F.2d at 1110.  Thus, to determine whether plaintiff has shown an Eighth Amendment violation, this Court must consider whether plaintiff's Complaint states a claim with respect to

the elements enumerated in Sample.

Given the facts of this case, the Court has no difficulty finding that defendants were aware of "the risk that unwarranted punishment was being, or would be, inflicted" by continuing to hold plaintiff in custody.  Id.  The Complaint, and documents referenced in the Complaint, disclose that plaintiff informed defendants that they were, in effect, lengthening his sentence beyond the period of imprisonment contemplated by the trial court.  (See Compl. ¶ 12; Defs.' Exs. 1A (Inmate's Request to Staff Member, July 31, 2003), 1D (Inmate's Request to Staff Member, October 30, 2003)).[12]  However, the same documents and the Complaint show that defendants neither failed to act nor took ineffectual action under the circumstances.  Defendants responded to plaintiff's queries, referred the matter to counsel, and wrote to the trial judge - all in an effort to resolve the matter.  (Compl. ¶¶ 10, 12; Defs.' Exs. 1A, 1D.)  In other words, defendants "were attempting to resolve the confusion over the sentencing order and were taking affirmative steps [throughout plaintiff's incarceration] toward that end."  Moore, 986 F.2d at 687.  Even viewing the facts in the light most favorable to the plaintiff, it cannot be said that defendants exhibited "deliberate indifference to [plaintiff's] plight."  Sample, 885 F.2d at 1110.  Thus, under Wilson/Saucier and Sample, plaintiff has not shown a violation of his Eighth Amendment rights.

### ii.  Fourteenth Amendment Claims

The Court next addresses plaintiff's argument that defendants violated his procedural and

---

[12]  In paragraph 12 of the Complaint, plaintiff references his "Inmate's Request to Staff Member" and defendant Thompson's response, including a quotation from that response.  By virtue of that reference, the Court can consider the documents, which were appended to defendants' Motion to Dismiss, in deciding the pending motion.

23

substantive due process rights under the Fourteenth Amendment by "ignor[ing] the specific order of the trial court."  (Compl. ¶ 19.)

Many courts have held that continuing to detain a prisoner after a judge has ordered his release violates the prisoner's Fourteenth Amendment right to liberty.  See, e.g., Davis, 375 F.3d at 712 ("[A]ny continued detention unlawfully deprived [prisoner] of his liberty, and a person's liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment."); Golson v. Dep't of Corrections, 914 F.2d 1491, 1990 WL 141470, at *1 (4th Cir. Oct. 2, 1990) (unpublished table decision) ("Incarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment."); Banks v. New York, 515 F. Supp. 2d 89, 115 (D.D.C. 2001) ("[T]here is . . .  a 'substantial body of law' recognizing that overdetention violates the Constitution.").  "However, to recover under the due process clause, a plaintiff must establish that defendants acted with something more than mere negligence."  Golson, 1990 WL 141470, at *1 (citing Daniels v. Williams, 474 U.S. 327, 334 (1986), and Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)).

The Third Circuit has held that "in a substantive due process challenge to an action taken by an executive branch official, 'the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Kaucher v. County of Bucks, 455 F.3d 418, 425 (3d Cir. 2006) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)). "Because the exact degree of wrongfulness necessary to reach the conscience-shocking level depends upon the circumstances of a particular case, the Court must evaluate the conditions under which a defendant acted in order to ascertain the relevant standard of culpability."  Kaucher, 455 F.3d at

24

426 (internal quotations and citations omitted).  The Third Circuit has approved of the "deliberate indifference" standard in a number of substantive due process-§ 1983 cases and that is the standard this Court applies in this case.  See id. at 428 n.5; see also id. at 427 n.3 (noting that the Supreme Court has identified deliberate indifference as the appropriate standard where prison officials enjoy the "luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations") (quoting Lewis, 523 U.S. at 853).

Plaintiff has averred, *inter alia*, that defendants "knew that [his] sentence had expired yet . . . refused to release him;" that defendants "knew or should have known that the so-called Split Sentence rule does not apply when the trial court specifically orders that an inmate be given credit for time-served;" and that defendants acted deliberately to violate his right to freedom. (Compl. ¶¶ 13, 17, 19.)  Taken in the light most favorable to the plaintiff, these facts, as alleged, show a violation of plaintiff's Fourteenth Amendment substantive due process rights.

Plaintiff also asserts a procedural due process claim, which the Court construes as a claim for denial of a liberty interest  - that is, the "right to freedom" - without sufficient process or "procedural safeguards."  (See Compl. ¶ 19; Pl.'s Resp. to Defs.' Mot. to Dismiss 13.)[13]  "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard.  Prior notice is not, however, absolutely necessary so long as other procedures guarantee protection against erroneous or arbitrary seizures."  Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998).  The

---

[13]  Plaintiff's Response to the Motion to Dismiss states:  "Plaintiff has attested a liberty interest that must be protected with procedural safeguards."  Pl.'s Resp. to Defs.' Mot. to Dismiss 13.

Complaint alleges that defendants "deleted the proviso of specific credit for time served contained in the trial court's sentence" and "ignore[d] the specific order of the trial court to award credit for time served," and thereby "violate[d] [plaintiff's] right to freedom."  (Compl. ¶ 2, 19.)  Construing these allegations in plaintiff's favor, the Court concludes that plaintiff challenges the procedures used by defendants in denying him his freedom.[14]  Therefore, under the notice pleading standard, plaintiff adequately pleads a violation of his Fourteenth Amendment procedural due process rights.  See Thomas, 463 F.3d at 297.

### b. Were Plaintiff's 4th and 14th Amendment Rights "Clearly Established"?

Having found that plaintiff has alleged the deprivation of his Fourth and Fourteenth Amendment rights, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  The Supreme Court has explained that "this inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition."  Id. at 201.  "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity."  Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004); see also Butz v. Economou, 438 U.S. 478, 507 (1978) (officers not liable for "mere mistakes in judgment, whether the mistake is one of fact or one of law").

The Complaint, and documents referenced in it, show that defendants initially denied plaintiff credit for time-served under their reading of Pennsylvania law at the time.  (Compl. ¶ 12; Defs.' Ex. 1A.)  As defendants perceived it, Pennsylvania law did not permit plaintiff to

---

[14]  The Court's conclusion is further supported by Plaintiff's Response to the Motion to Dismiss, in which plaintiff objects to defendants' letters to Judge New, which he characterizes as efforts to "educate" the trial court.  Pl.'s Resp. To Defs.' Mot. to Dismiss 4, 12.

receive "duplicate credit" for time-served unless denying plaintiff such credit would cause him to be incarcerated for a period exceeding the statutory maximum.  Defendants based their judgment on a "recent" decision of the Pennsylvania Superior Court, as well as the advice of counsel, and ultimately Judge New's November 3, 2003, letter.  Taking into account this specific context, the "relevant, dispositive inquiry" for this Court is whether it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.

Given the circumstances of this case, the Court concludes that it would not be clear to a reasonable officer that his conduct was unlawful.  The Complaint and documents referenced in the Complaint show that defendants acted in accordance with what they believed to be current law.  (Compl. ¶ 12; Defs.' Ex. 1A.); see also McSpadden, 886 A.2d at 324 (explaining DOC's arguments under Bowser for denying plaintiff "additional credit").  The Court finds that this mistake of law was reasonable, especially in light of the ambiguity in Judge New's letter to defendants.  See Butz, 438 U.S. at 507 (officials not liable "for mere mistakes in judgment, whether the mistake is one of fact or one of law"); Green v. New Jersey State Police, 246 Fed. Appx. 158, 162 (3d Cir. 2007) ("Officers who make reasonable mistakes as to what the law requires are entitled to qualified immunity").  In the situation confronted by defendants, a reasonable officer could determine that his actions were lawful.  Thus, it cannot be said that plaintiff's rights were clearly established at the time of the alleged violation such that defendants should be stripped of qualified immunity.  Keeping in mind the scope and purpose of the doctrine of qualified immunity, see, e.g. Malley, 475 U.S. at 341, the Court holds that defendants are shielded from liability and grants the Motion to Dismiss on this ground.

Finally, the Court addresses plaintiff's argument that defendants are precluded by the Full

Faith and Credit Act, 28 U.S.C. § 1738, and the doctrines of res judicata and collateral estoppel

from arguing that their interpretation of the Split Sentence Rule was objectively reasonable for

purposes of the qualified immunity test.  (Pl.'s Resp. to Defs.' Mot. to Dismiss 14-15) (citing

Allen v. McCurry, 449 U.S. 90 (1980)).[15]  "Under collateral estoppel, once a court decides an

issue of fact or law necessary to its judgment, that decision precludes relitigation of the same

issue on a different cause of action between the same parties."  Walker v. Horn, 385 F.3d 321,

336-37 (3d Cir. 2004).  "[I]n cases where a party seeks to rely on a state court judgment to

preclude relitigation of the same issues in federal court, a federal court must look to state law and

its assessment of the collateral estoppel doctrine to determine the extent to which the state would

give its own judgment collateral estoppel effect."  Bailey v. Ness, 733 F.2d 279, 281 (3d Cir.

1984).

> Under Pennsylvania law, the following conditions must exist before collateral
> estoppel may be invoked: (1) the issue decided in the prior adjudication was
> identical with the one presented in the later action; (2) there was a final judgment
> on the merits; (3) the party against whom the plea is asserted was a party or in
> privity with a party to the prior adjudication; and (4) the party against whom it is
> asserted has had a full and fair opportunity to litigate the issue in question in a
> prior action."

Walker, 385 F.3d at 337.  Similarly, "for the defense of res judicata to prevail, it is necessary

that, between the previous action and the present action, there be an identity of issues decided . . .

."  Oppong v. First Union Mortg. Corp., 215 Fed. Appx. 114, 117 (3d Cir. 2007).

As in Walker, it is apparent to this Court that "the first requirement for collateral estoppel

is not met here."  Id.  The issue decided in McSpadden v. Department of Corrs. was whether

---

[15]  "The Restatement of Judgments now speaks of res judicata as 'claim preclusion' and
collateral estoppel as 'issue preclusion.'  Some courts and commentators use 'res judicata' as
generally meaning both forms of preclusion."  Allen v. McCurry, 449 U.S. 90, 94 n.5 (1980).

DOC improperly refused to award plaintiff credit for time-served.  See id., 886 A.2d at 328.

Although plaintiff raised a number of constitutional claims in the state court, the court did not

address the merits of those claims.  Consequently, the reasonableness of defendants' actions was

not addressed in McSpadden.  By contrast, this case raises that very issue.  Thus, the issue

presented in the prior adjudication was not "identical to the one presented in [this] action."

Walker, 385 F.3d at 337.  Therefore, neither defendants' reasonableness argument nor their

qualified immunity defense is barred by the doctrine of collateral estoppel.  See id.  For the same

reason, defendants' qualified immunity claim is not res judicata.

### B.  Motion, in the Alternative, to Dismiss or Transfer Venue

Because defendants are entitled to qualified immunity and the case will be dismissed on

that ground, the Court need not address the motion, in the alternative, to dismiss or transfer for

improper venue.

## V.  Conclusion

The Court, having considered defendants' Motion to Dismiss on statute of limitations and

qualified immunity grounds, concludes that although plaintiff's Complaint was timely filed, it

must be dismissed because defendants are entitled to qualified immunity.  In the "specific

context" of this case, it cannot be said that defendants violated "clearly established . . .

constitutional rights of which a reasonable person should have known."  Harlow, 457 U.S. at

818.  Nor can it be said that "it would be clear to a reasonable officer that his conduct was

unlawful in the situation [defendants] confronted."  Saucier, 533 U.S. at 202.  Because the Court

grants defendants' Motion to Dismiss on qualified immunity grounds, it need not address the

motion, in the alternative, to dismiss or transfer for improper venue.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BLAKE MCSPADDEN** | : | **CIVIL ACTION** |
| | : | |
| **vs.** | : | |
| | : | |
| **WILLIAM J. WOLFE and** | : | **NO.  07-1263** |
| **PATRICK THOMPSON** | : | |
| | : | |

# O R D E R

**AND NOW**, this 31st day of March, 2008, upon consideration of Defendants' Motion to Dismiss or, in the Alternative, to Transfer (Document No. 5, filed August 6, 2007); Plaintiff's Response to Defendants' Motion to Dismiss or, in the Alternative, to Transfer (Document No. 7, filed August 20, 2007); and Plaintiff's Supplemental Response to Defendants' Motion to Dismiss on the Issue of Qualified Immunity (Document No. 10, filed September 25, 2007), and following a telephone conference with the parties, through counsel on September 18, 2007, **IT IS ORDERED** that Defendants' Motion to Dismiss is **GRANTED** and plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.[1]

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**
**JAN E. DUBOIS**, **J**.

---

[1]  Because the Court grants Defendants' Motion to Dismiss on qualified immunity grounds, it need not address the motion, in the alternative, to dismiss or transfer for improper venue.